# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| RICHARD HOOGSTRA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:05-CV-268 |
| | § | |
| WEST ASSET MANAGEMENT, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The following are pending before the court:

1. Defendant's motion for summary judgment and brief in support (docket entry #24);

2. Plaintiff's objections to Defendant's summary judgment evidence and motion to strike (docket entry #31);

3. Defendant's response to Plaintiff's objections to Defendant's summary judgment evidence and motion to strike (docket entry #33);

4. Plaintiff's response to Defendant's motion for summary judgment (docket entry #32); and

5. Defendant's reply in support of motion for summary judgment (docket entry #34).

Having considered the Defendant's motion for summary judgment and the respective responsive briefing thereto, the court is of the opinion that the motion should be granted.

## OBJECTIONS

The Plaintiff objects to certain evidence presented by the Defendant and moves to disregard the same. Specifically, the Plaintiff objects to the affidavits of Rhonda Lukie ("Lukie"), human resource manager at the Defendant's Sherman, Texas location, and Mark DeMoe ("DeMoe"),

director of operations at the Defendant's Sherman, Texas location, because the affidavits are conclusory and based on hearsay and speculation.

First, the Plaintiff objects to the affidavits because they are based on hearsay. The Plaintiff argues that the affidavits contain references to conversations between the Plaintiff and Kevin Cloud ("Cloud"), a collection manager for the Defendant. Additionally, the Plaintiff argues that the affidavits contain references to conversations Lukie and DeMoe had with Cloud and Kristell Williams ("Williams"), one of Defendant's employees and the lead collector on the Plaintiff's team. The evidence in question was not presented for the truth of the matter asserted; rather, the evidence was submitted to show the Defendant's employees' state of mind when the Plaintiff was terminated. *See Denson v. MeadWestvaco Corp.*, 2005 WL 2179116, *2 (N.D. Tex. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 n. 4 (5th Cir. 1996). As such, the statements are not hearsay.

Second, the Plaintiff objects to the affidavits because they are conclusory and speculative. In considering the Defendant's motion, the court disregarded any conclusory or speculative evidence. *See Denson*, 2005 WL 2179116 at *2. Accordingly, the Plaintiff's objections are **OVERRULED** and the motion to strike is **DENIED** (docket entry #31).

## BACKGROUND

The Plaintiff began working as a collector for the Defendant, a debt collection company, in August 2001. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 3. Upon commencement of his employment with the Defendant, the Plaintiff was provided with a copy of the Defendant's Employee Manual. *Id.* at Exh. B (Pl. Dep.) 10:8-25 to 13:1-6; Exhs. B1, B2 and B3.[1] The Plaintiff

---

[1] Prior to becoming West Asset Management, Inc., the Defendant was known as Attention, L.L.C. Def. Mtn. for Summ. Judgment, Exh. B (Pl. Dep.) 10:21-23.

reviewed the policies, the relevant portions of which are provided as follows:

### Prohibited Personal Relationships

Romantic or sexual relationships between managers and / or subordinate employees are strictly prohibited. These relationships create morale problems and frequently result in accusations that a person's superior position was used to obtain sexual favors.

For the purposes of this policy, a prohibited sexual relationship is defined as a sexual or romantic relationship between any:

- An officer, division manager, manager, manager trainee, or mentor and any employee within that person's chain of command or sphere of influence.

- A Company employee and an employee of a customer, subcontractor, client or vendor when the Company employee has the capacity to directly influence the business relationship.

If an employee suspects or knows of a violation of this policy, he or she should report it to his or her supervisor, Human Resources representative or any member of management. Further, any manager who receives a complaint alleging a violation of this policy or becomes aware of any activity that could be interpreted as a violation of this policy must immediately inform their manager. All complaints of violation of this policy will be investigated. When in the Company's opinion the facts substantiate the allegations, the Company will approach each party and appropriate remedial or disciplinary action will be taken. Upon continued violation of this policy, both parties may be disciplined, up to and including termination.

The Company does not seek to interfere with the personal lives of its employees but feels that the implementation of this policy is necessary for the maintenance of a professional atmosphere free from distractions, favoritism and improprieties.

### Disciplinary Actions Improvement Policy

This Disciplinary Actions Policy applies to all regular employees who have completed the Introductory Period.

This policy pertains to matters of conduct as well as the employee's competence. However, an employee who does not display satisfactory performance and accomplishment on the job may be dismissed, in certain cases, without resorting to the steps set forth in this policy.

> Under normal circumstances, managers are expected to follow the procedure outlined below. There may be particular situations, however, in which the seriousness of the offense justifies the omission of one or more of the steps in the procedure. Likewise, there may be times when the Company may decide to repeat a disciplinary step.
>
> The Company believes that discipline and / or performance issues can be resolved so as to get the employee to perform in an acceptable manner.
>
> **STEP 1 – Identify the problem.** The supervisor and the employee must meet to discuss the problem. The employee should acknowledge the issue and agree to work towards a resolution plan.
>
> **STEP 2 – Establish a correction program.** Once the problem has been defined, the supervisor and employee will work out a plan to correct the discipline or performance problem. The correction program will be written down with measurable results and a definite timetable for achieving those results.
>
> **STEP 3 – Establish a consequence.** The consequences for not following the correction program will be communicated in writing and acknowledged by the employee. This ensures that the employee realizes and understands the importance of achieving these results as well as what the consequences will be for failure to achieve them.

Pl. Resp., Exh. A (Pl. Dep., Exh. B-3, pp. 31, 51-52).

In 2002, the Plaintiff was promoted to the position of collection manager. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 3. The Plaintiff's direct supervisor was DeMoe. Def. Mtn. for Summ. Judgment, Exh. D, ¶ 3. As a collection manager, the Plaintiff supervised approximately ten (10) collectors. *Id*. at ¶ 4. Patricia Blackwell ("Blackwell") was one of the collectors that the Plaintiff supervised. Def. Mtn. for Summ. Judgment, Exh. B (Pl. Dep.) 9:9-16. Blackwell began working for the Defendant in April 2005 as a big balance collector. Pl. Resp., Exh. E.

In the same month that Blackwell began working for the Defendant, Cloud reported to Lukie and DeMoe that the Plaintiff had commented to him (Cloud) that the Plaintiff was involved in a relationship with Blackwell. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 4; Exh. E (Cloud Dep.) 22:2-

25 to 28:1-16, 32:9-25 to 33:1-4. Based on Cloud's report, Lukie and DeMoe subsequently questioned the Plaintiff about his alleged relationship with Blackwell. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 4; Exh. D, ¶ 5. The Plaintiff denied the existence of any relationship with Blackwell. *Id*. As such, Lukie and DeMoe concluded that there was insufficient information to make a determination about the alleged relationship and took no action. *Id*.

Thereafter, at approximately 6:30 p.m. on May 19, 2005, Lukie noticed the Plaintiff and Blackwell together in the Plaintiff's truck at a stoplight in Denison, Texas. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 5. Lukie notified DeMoe via voicemail that evening of her sighting. *Id*. at Exh. D, ¶ 6. On May 20, 2005, Lukie and DeMoe questioned Cloud again, seeking any additional information regarding the possible relationship between the Plaintiff and Blackwell. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 5; Exh. D, ¶ 6. Cloud informed Lukie and DeMoe that the Plaintiff had told him that the Plaintiff and Blackwell were "sleeping together" and "living together." *Id*. Cloud further advised that Williams might have additional information on the alleged relationship. *Id*. Upon questioning Williams, Lukie and DeMoe learned that Blackwell had informed Williams that Blackwell had previously spent the night at the Plaintiff's house. *Id*. Additionally, Williams stated that the Plaintiff had previously asked her to take time off from work to retrieve Blackwell from the airport. *Id*.

With this information, Lukie and DeMoe approached Blackwell. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 6; Exh. D, ¶ 7. Lukie and DeMoe asked Blackwell if she was in a relationship with the Plaintiff and whether she had been in the Plaintiff's truck the previous evening. *Id*.; Pl. Resp., Exh. E. Blackwell denied both allegations. *Id*. Blackwell avers that she did not respond truthfully to the question about her being in the Plaintiff's truck because she was concerned that the

Plaintiff would get into trouble for giving her a ride. Pl. Resp., Exh. E. Given that Lukie saw Blackwell in the Plaintiff's truck, Blackwell was terminated. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 6; Exh. D, ¶ 7; Pl. Resp., Exh. E. Blackwell avers that she was not in a relationship with the Plaintiff while she was employed by the Defendant. Pl. Resp., Exh. E.

Lukie and DeMoe then questioned the Plaintiff. The Plaintiff admitted that Blackwell was in his truck the previous evening. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 6; Exh. D, ¶ 7; Pl. Resp., Exh. F. The Plaintiff avers that he gave Blackwell a ride to Wal-Mart because her vehicle was not operational. Pl. Resp., Exh. F. The Plaintiff further avers that he was not in a relationship with Blackwell while he was employed by the Defendant; rather, the Plaintiff and Blackwell were good friends. *Id*.

Additionally, in May 2005, Serena Bradshaw ("Bradshaw"), the assistant director of operations, informed DeMoe that Denise White, a collector on the Plaintiff's team, had complained that the Plaintiff improperly transferred collection accounts to Blackwell. Def. Mtn. for Summ. Judgment, Exh. D, ¶ 8. Since collectors are compensated based on their collections, collection managers are restricted in their ability to transfer accounts from departed employees to members of their team so as not to show favoritism to one collector over another. *Id*. at ¶ 10. Further, the Defendant does not permit its collection managers to transfer accounts with post-dated checks to collectors on their team until all of the post-dated checks clear. *Id*. To allow otherwise would result in collectors receiving credit for commissions which they did not work to collect. *Id*. As such, collection managers are to retain accounts with post-dated checks in their own route until all of the post-dated checks clear. *Id*. This policy, according to DeMoe, was discussed at numerous managers'

meetings.[2] *Id*.

At the conclusion of her investigation, Bradshaw discovered that the Plaintiff had transferred to Blackwell at least three accounts from a departed employee which contained post-dated checks. *Id*. at ¶ 11. On the morning of May 19, 2006, Bradshaw transferred the accounts back to the Plaintiff's route. *Id*. When Lukie and DeMoe questioned the Plaintiff on May 20, 2005 about the transfers, the Plaintiff admitted to transferring the accounts to Blackwell and others. Pl. Resp., Exh. A (Pl. Dep.) 40:11-25 to 41:1-22. However, the Plaintiff testified that the Defendant did not have a policy prohibiting such transfers. *Id*. at 34:1-22. The Plaintiff was subsequently terminated on May 20, 2005.

While the Plaintiff was employed by the Defendant, he was diagnosed with hepatitis C. Pl. Resp., Exh. F. In March 2005, the Plaintiff learned that his condition had worsened and he would require aggressive treatments including, but not limited to, chemotherapy. *Id*. On March 7, 2005, the Plaintiff was admitted to Texoma Healthcare System in Denison, Texas for depression. *Id*. The Plaintiff's depression stemmed from his recent diagnosis. *Id*.

On March 8, 2005, the Plaintiff submitted a request for leave under the Family and Medical Leave Act ("FMLA"). The Plaintiff sought leave from work from March 7, 2005 through March 21, 2005 to treat his depression. Def. Mtn. for Summ. Judgment, Exh. C, ¶ 9. This request was granted. The Plaintiff returned to work on March 21, 2005. *Id*.

Sometime after returning to work, the Plaintiff requested a second set of FMLA paperwork. *Id*. at ¶ 10. On May 20, 2005, having returned to work after receiving his first treatment, the Plaintiff submitted a Certification of Health Care Provider to the Defendant. Pl. Resp., Exh. F. The Plaintiff

---

[2]The court was not provided with a written policy on the same.

did not request any specific leave from work because he did not know what effects the treatments would have on him. *Id.* Rather, the Plaintiff submitted the Certification to the Defendant in the event he should need leave in the future. Pl. Resp., Exh. A (Pl. Dep.) 99:3-16.

On July 7, 2005, the Plaintiff filed the instant lawsuit. According to his complaint, the Plaintiff alleges that the Defendant terminated him in retaliation for seeking FMLA leave. On May 31, 2006, the Defendant filed its motion for summary judgment, arguing that the Plaintiff cannot establish a *prima facie* case of retaliation and, further, cannot rebut the Defendant's legitimate, non-discriminatory reason for discharge.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary

judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

### 1. THE FAMILY AND MEDICAL LEAVE ACT

"The FMLA requires covered employers to provide up to 12 weeks of unpaid leave to any eligible employee who suffers from 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999), quoting 29 U.S.C. § 2612(a)(1)(D) (remaining citation omitted). "After a qualifying absence, the employer must restore the employee to the same position or a position comparable to that held by the employee before the leave." *Id.*, citing 29 U.S.C. § 2614(a)(1).

"The FMLA prohibits employers from 'interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under' the act." *Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005), quoting 29 U.S.C. § 2615(a)(1). "Concomitantly, the FMLA prohibits employers from 'discharg[ing] or in any other manner discriminat[ing] against an individual for opposing any practice made unlawful' by the act." *Id.*,

quoting 29 U.S.C. § 2615(a)(2). "To make a *prima facie* case of retaliatory discharge, the employee must show that (1) [he] engaged in a protected activity, (2) the employer discharged [him], and (3) there is a causal link between the protected activity and the discharge." *Id*. (citation omitted).

Absent direct evidence of discriminatory intent, FMLA retaliation claims should be analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973). *Id*. However, when a plaintiff concedes that discrimination was not the sole reason for his discharge, but argues that discrimination was a motivating factor in his termination, the court should apply the mixed-motive analysis. *Id*. at 333. Here, the Plaintiff does not appear to concede that discrimination was the sole reason for his discharge; however, in an abundance of caution, the court will apply the mixed-motive analysis.

In order to determine whether an employer discharged an employee in retaliation for participating in FMLA-protected activities under the mixed-motive framework, "(1) the employee must establish a *prima facie* case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or . . . (b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson*, 434 F.3d at 333. "If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus." *Id*. "The employer's final burden 'is effectively that of proving an affirmative defense.'" *Id*., quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005).

**2. ANALYSIS**

**A.    *Prima Facie* Case**

The Defendant appears to acknowledge that the Plaintiff met the first and second elements necessary to establish a *prima facie* case of retaliation under the FMLA.[3]  *See Jarjoura v. Ericsson, Inc.*, 266 F.Supp.2d 519, 529 (N.D. Tex. 2003), *affirmed* 82 Fed. Appx. 998 (5th Cir. 2003). The Defendant, however, argues that the Plaintiff failed to establish the third element (the causal connection) and, thus, failed to establish a *prima facie* case of FMLA retaliation.  *See id.*

The third element of a *prima facie* case requires the Plaintiff to establish that he was terminated because he requested or took leave under the FMLA.  *See id.*  The Plaintiff argues that he established a causal link between his FMLA protected activity and his discharge as follows:

1. With the exception of one prior reprimand for attendance, the Plaintiff did not receive any other disciplinary actions;

2. In terminating the Plaintiff, the Defendant failed to follow its own progressive disciplinary procedures; and

3. A strong temporal proximity exists between the Plaintiff's FMLA protected activity and his discharge.

The court reviews each argument in turn. First, the fact that the Plaintiff only received one prior disciplinary action does little to support the Plaintiff's contention of retaliatory discharge. The Plaintiff offered the statement concerning his past disciplinary history without relating it to the issue at hand. As such, the Plaintiff has done nothing more than offer a conclusory argument.

Second, the Defendant was not required to progressively discipline the Plaintiff.  The

---

[3]Although the Defendant mentions in passing that the Plaintiff did not request leave for a specific period of time in his second request for FMLA leave, the Defendant does not appear to argue that the Plaintiff did not seek protective status under the FMLA.

Defendant's policy prohibiting personal relationships between managers and their subordinates provides that when it appears the policy has been violated, "the Company will approach each party and appropriate remedial or disciplinary action will be taken. Upon continued violation of this policy, both parties may be disciplined, up to and including termination." Here, the Plaintiff was questioned about a possible relationship with Blackwell one month prior to his termination. Although Lukie and DeMoe concluded that insufficient information existed to take any disciplinary action, when the issue arose for the second time, they chose termination as the appropriate remedial action. Although it appears to the court that the Defendant did not violate the terms of its disciplinary policy, the court notes that the policy further provides that "[t]here may be particular situations, however, in which the seriousness of the offense justifies the omission of one or more of the steps in the procedure."[4] Since the Defendant was not required to follow each disciplinary step contained within its policy, the Defendant did not violate its progressive disciplinary policy.

Finally, the timing of the Plaintiff's termination does not support an inference of retaliation. "When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." *Mauder v. Metropolitan Transit Authority of Harris County, Texas*, 446 F.3d 574, 583 (5th Cir. 2006). "Moreover, the plaintiff does not have to show that the protected activity is the only cause of [his] termination." *Id*. "The plaintiff is, however, required to show that the protected

---

[4] The Plaintiff argues that his alleged violation of the personal relationship policy did not rise to the level of a serious nature. The Plaintiff contends that since the Defendant only prohibits relationships between managers and their direct reports, the Defendant should have removed Blackwell from his team rather than terminating his employment. Although this might have been the approach taken by the Defendant when the subject was first broached in April 2005, it certainly was not the only course of action available when the issue arose for the second time one month later.

activity and the adverse employment action are not completely unrelated." *Id*. While the Plaintiff's termination occurred approximately two (2) months after he returned from taking FMLA leave and on the same day that he submitted his second request for FMLA leave, it does not create an inference of retaliation. *See Jarjoura*, 266 F.Supp.2d at 531. The Plaintiff essentially argues that since his termination came so close in time to his return from FMLA leave and his subsequent second request for FMLA leave, retaliation must have been the reason for his termination. *See id*. However, without more, the same is insufficient to infer that retaliatory discrimination took place because the Plaintiff took or requested FMLA leave. *See id*. "Stated another way, timing alone is not enough to support retaliation when evidence shows that the employer's actions were justified. An anti-discrimination or retaliation statute does not exempt an employee from violations of company work rules or job requirements." *Id*. (citation omitted); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir. 1999) ("Indeed, the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment."). Based on the foregoing, the court concludes that the Plaintiff failed to establish a *prima facie* case of retaliatory discharge.

      **B.**    **Pretext or a Motivating Factor**

Assuming, *arguendo*, that the Plaintiff did establish a *prima facie* case, he fails to overcome the Defendant's legitimate, non-discriminatory reason for his discharge. In response to the Plaintiff's claim of retaliatory discharge, the Defendant states that the Plaintiff was terminated for violating the Defendant's personal relationship policy as well as improperly transferring collection accounts. In response, the Plaintiff argues that the Defendant's stated reasons for discharge are nothing more than a pretext for retaliation for his taking, or applying for, leave under

the FMLA.  *See Jarjoura*, 266 F.Supp.2d at 530.

The Defendant produced evidence that the Plaintiff was terminated for violating the personal relationship policy.  *See id.*  The Plaintiff responded by stating that he was not involved in a relationship with Blackwell.[5]  This, however, is not sufficient.  *See Jones v. Continental Airlines, Inc.*, 2005 WL 2233619, *4 (S.D. Tex. 2005).  "Rather, it is [the Defendant's] good faith belief in [the Plaintiff's] [violation of the personal relationship policy] that he must disprove."  *Id*.  The Plaintiff, however, has not introduced evidence that the Defendant's good faith belief in his violation of the personal relationship policy was a pretext for retaliation or that his FMLA protected activity was a motivating factor in his discharge.

The Plaintiff has a subjective belief that he was terminated for taking FMLA leave and requesting additional FMLA leave.  *See Jarjoura*, 266 F.Supp.2d at 532.  "A subjective belief, however, cannot establish a genuine issue of material fact regarding pretext or that [the Plaintiff] was a victim of retaliatory discrimination."  *Id*.

Additionally, the Defendant stated that the Plaintiff was discharged for improperly transferring collection accounts.  However, the Defendant did not provide the court with a copy of this policy.  Further, the Plaintiff contends that the Defendant did not have such a policy.  However, since the Defendant articulated a legitimate, non-discriminatory reason for the Plaintiff's discharge (violation of the personal relationship policy), the court finds that it is unnecessary to discuss the

---

[5]The Plaintiff points to three specific instances in which he was seen with Blackwell outside of the work setting.  However, the Plaintiff failed to respond to Cloud's allegation that the Plaintiff told him that the Plaintiff and Blackwell were "living together" and "sleeping together."  Additionally, the Plaintiff failed to respond to Williams's allegation that Blackwell told her that Blackwell had spent the night at the Plaintiff's house.  Finally, the Plaintiff failed to respond to Williams's allegation that the Plaintiff had asked her to take time off from work to retrieve Blackwell from the airport.

other stated reason for the Plaintiff's discharge (the improper transfer of collection accounts). *See Jarjoura*, 266 F.Supp.2d at 530.

The *Jarjoura* court commented on the purpose of anti-discrimination statutes. Those comments bear repeating:

> Anti-discrimination statutes *do not* prevent employers from disciplining employees who violate company rules or policies, and an employee cannot use such a statute as a shield against legitimate disciplinary action. The statutes *do* prevent adverse employment action based on discrimination or retaliation.

*Jarjoura*, 266 F.Supp.2d at 533. The court concludes that the Plaintiff failed to put forth sufficient evidence to raise a genuine issue of material fact that he was discharged in retaliation for participating in FMLA-protected activities.

## CONCLUSION

Based on the foregoing, the court hereby **GRANTS** the Defendant's motion for summary judgment (docket entry #24). Further, the Plaintiff's objections are **OVERRULED** and the motion to strike is **DENIED** (docket entry #31).

IT IS SO ORDERED.

**SIGNED this the 4th day of August, 2006.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE